**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | |
| | ) | |
| **v.** | ) | **CRIMINAL ACTION FILE** |
| | ) | **NO. 1:09-CR-541-JEC-AJB** |
| **BRIAN GRAHAM,** | ) | |
| | ) | |
| **Defendant.** | ) | |

**ORDER FOR SERVICE OF
REPORT AND RECOMMENDATION**

Attached is the Report and Recommendation ("R&R") of the United States

Magistrate Judge made in accordance with 28 U.S.C. § 636(b)(1) and

N.D. Ga. CrR. 58.1(A)(3)(a), (b).  A copy of the R&R and this order shall be served

upon counsel for the parties.

Pursuant to 28 U.S.C. § 636(b)(1), each party may file written objections to the

R&R within **fourteen (14)** days of service of this Order.  **However, this matter is

scheduled for trial on October 25, 2010.  Therefore, in order that the District

Court have sufficient time to consider any objections to the attached R&R, the

Court shortens the time within which objections are to be filed. THE PARTIES

SHALL HAVE UNTIL 5:00 PM ON OCTOBER 20, 2010, IN WHICH TO FILE

OBJECTIONS, SO THAT THE DISTRICT COURT MAY HAVE SUFFICIENT**

**TIME TO RULE ON ANY OBJECTIONS.** Should objections be filed, they shall specify with particularity the alleged error(s) made (including reference by page number to the transcript if applicable) and shall be served upon the opposing party. *See United States v. Gaddy*, 894 F.2d 1307, 1315 (11th Cir. 1990). The party filing objections will be responsible for obtaining and filing the transcript of any evidentiary hearing for review by the District Court. If no objections are filed, the R&R may be adopted as the opinion and order of the District Court and any appellate review of factual findings will be limited to a plain error review. *United States v. Slay*, 714 F.2d 1093 (11th Cir. 1983).

Pursuant to 18 U.S.C. § 3161(h)(1)(H), **the above-referenced time for filing objections is EXCLUDED from the computation of time under the Speedy Trial Act ("the Act"), whether or not objections are actually filed.** If objections to this R&R are filed, the Clerk is **DIRECTED** to **EXCLUDE** from the computation of time all time between the filing of the R&R and the submission of the R&R, along with any objections, responses and replies thereto, to the District Judge. 18 U.S.C. § 3161(h)(1)(D), (H); *Henderson v. United States*, 476 U.S. 321, 331 (1986); *United States v. Mers*, 701 F.2d 1321, 1337 (11th Cir. 1983). The Clerk is **DIRECTED** to

submit the R&R with objections, if any, to the District Court after expiration of the

above time period.

**IT IS SO ORDERED and DIRECTED**, this  14th   day of    October   , 2010.

_____
**ALAN J. BAVERMAN**
**UNITED STATES MAGISTRATE JUDGE**

3

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | |
| | ) | |
| **v.** | ) | **CRIMINAL ACTION FILE** |
| | ) | **NO. 1:09-CR-541-JEC-AJB** |
| **BRIAN GRAHAM,** | ) | |
| | ) | |
| **Defendant.** | ) | |

**UNITED STATES MAGISTRATE JUDGE'S
FINAL REPORT AND RECOMMENDATION**

Defendant Graham has moved to suppress his post-arrest statements which the government intends to introduce at his trial.  [Doc. 43].  The Court conducted an evidentiary hearing on September 13, 2010, [Doc. 47 (hereinafter T__)], at which it gave Defendant until September 29, 2010, within which to file a brief in support of his motion.  [*Id.* at 36-37].  No brief has been filed.  [*See* Dkt.].  For the following reasons, the undersigned **RECOMMENDS** that the motion be **DENIED**.

*Facts*

On December 15, 2009, U.S. Postal Inspector Jessica Owen and other inspectors, along with a local police officer, went to Defendant's apartment in Lithia Springs, Ga., to execute a federal arrest warrant upon Defendant.  T5-6.  The warrant had issued upon Defendant's indictment on December 9, 2009, for bank fraud.  [*See* Docs. 1, 3].

The arrest team arrived at Defendant's apartment at about 9:20 a.m.   T5. Initially, the law enforcement officers approached the apartment with their firearms out but in the down position.   T11.   Graham's roommate answered the door and was detained.   T11.   The officers entered the residence and had their weapons out while going through the residence looking for Graham and performing a protective sweep. T12.   Once Graham was in custody and the apartment was secured, all weapons were re-holstered.   T12.

Owen first encountered Defendant in his bedroom, where he had been handcuffed by another inspector as Defendant was coming out of the master bedroom bathroom.   T6.   Graham asked and was allowed to brush his teeth, T6, and to get dressed since when he first was encountered, he was wearing only boxer shorts.   He pointed out to the inspectors the clothes he wanted to wear, and his handcuffs were removed to allow him to get dressed.   T7.

Graham was asking Owen what he was arrested for, and Owen responded that she would advise him once they got to the Postal Inspectors' office.   T8.   Graham was aggravated about being arrested but had a pleasant attitude.   T8.   He was alert and in

2

control of his faculties.  T8.  The inspectors and Graham were together in his apartment for only 10 to 15 minutes.  T8.[1]

Graham was placed in the backseat of Owen's vehicle.  T9-10.  Either while she was standing outside the vehicle or after she got into the backseat with Graham, Owen read Graham his *Miranda* rights from a preprinted card, as follows:

> Before you are asked any questions, you must understand your rights. You have the right to remain silent.  Anything you say can be used against you in court.  You have the right to talk to a lawyer for advice before we ask you any questioning - - any questions and to have him or her with you during questioning.  If you cannot afford a lawyer, one will be appointed for you before any questioning if you wish.  If you decide to answer questions now without a lawyer present, you will still have the right to stop answering at any time until you talk to a lawyer.

T10-11.  Owen asked Graham whether he understood and Graham responded that he did.  However, she did not ask him any questions.  T11.  The only conversation in the vehicle between Owen (who was in the backseat with Graham) or Inspector Henry, who was driving the vehicle, and Graham was in response to questions from Graham, but this conversation did not relate to the case.  T11.

---

[1]     Graham's roommate also wanted to know why Graham was being arrested. Owen advised the roommate that it was not her position to tell him and that he should ask Graham.  She told him that Graham would have his initial appearance in federal court later that day.  T9.

AO 72A
(Rev.8/8
2)

Graham was transported to the Postal Inspectors' office in Hapeville, Ga., about 20 minutes from his apartment.  T12.  On arrival, he was fingerprinted and a DNA swab was taken from him.  T12.

He was then placed in an interview room.  T12-13.  The room was small, and it was equipped with a small table, four chairs and a telephone.  There was only one door and a two-way mirror.  T13.  Owen sat at the table across from Graham, while Inspector Henry was at the other end of the table near the wall.  T24.  The inspectors were armed but their firearms were concealed.  T25.  Graham was not handcuffed while being interviewed.  T23.

Graham's demeanor was calm.  T13.  Owen described him as pleasant and responsive.  T13.  She again advised him of his *Miranda* rights, this time from a pre-printed form.  Gov't Exh. 1; T13.  Owen read the form out loud to Graham while he read along.  The form provided as follows:[2]

U.S. Postal Inspection Service
WARNING AND WAIVER OF RIGHTS

Place: *Atl. DHQ*
*200 Tradeport Blvd. Suite 209, Atl, GA*
Date: *12-15-09*      Time: *10:27 AM*

---

[2]      Handwritten entries are denoted by italics.

4

**WARNING**

**BEFORE YOU ARE ASKED ANY QUESTIONS, YOU MUST UNDERSTAND YOUR RIGHTS.**

- **You have a right to remain silent.**
- **Anything you say can be used against you in court.**
- **You have the right to talk to a lawyer for advice before we ask you any questions and to have him with you during questioning.**
- **If you cannot afford a lawyer, one will be appointed for you before any questioning if you wish.**
- **If you decide to answer questions now without a lawyer present, you will still have the right to stop answering questions at any time.  You have the right to stop answering questions at anytime until you talk to a lawyer.**

**I have read this statement of my rights (This statement of my rights has been read to me) and I understand what my rights are.**

| _10/15/09_ | _10:27_ | _s/  B. Graham_ |
|:---:|:---:|:---:|
| (Date) | (Time) | (Signature) |

**WAIVER**

**I am willing to discuss subjects presented and answer questions.  I do not want a lawyer at this time.  I understand and know what I am doing.  No promises or threats have been made to me and no pressure or coercion of any kind has been used against me.**

| _10/15/09_ | _10:27_ | _s/ B. Graham_ |
|:---:|:---:|:---:|
| (Date) | (Time) | (Signature) |

Witnessed by:   _s/ K. Henry_
Title:   _Postal Inspector_
Witnessed by:   _s/ Jessica Owen_
Title:   _Postal Inspector_

5

AO 72A
(Rev.8/8
2)

[Gov't Exh. 1 (bold type in original)].  Graham signed the form at 10:27 a.m.  T14. Owen explained to Graham that he was charged with bank fraud at Bank of America with an account in the name of Reuters, that they had a warrant for him, and asked him what happened and for his side of the story.  T15, 31.

Owen testified that Graham's demeanor was the same as it had been: he answered questions in a calm tone.  He did not appear confused or addled, nor did he act frightened or overanxious.  T15.

During the interview, Owen showed him checks from banks that had been made payable to him, in an effort to get him to confirm whether he had cashed them and disclose what he did with the money.  T16; *see also* Gov't Exh. 2.  She explained to him that he needed to be 100 per cent truthful and that being partially truthful would not help him.  T18.  She further explained that she would rather him not tell her anything than lie to her.  T18.  Owen also explained to him that it did not matter if he only received a portion of the proceeds from any check, because he would be held responsible for the entire amount.  T18.  The interview was not recorded electronically or by a stenographer.  T29.  However, Owen prepared a memorandum of the interview after it was concluded.  Gov't Exh. 2.

6

Neither Owen nor Henry made any threats or promises to Graham, nor did they employ any trickery or deceit.  T16-17, 18, 19, 23.   They did not tell him what either the prosecutor or courts would do in his case.  He was not threatened, yelled at or struck during the interview.  T23.  No one in the room stood up during the interview.  T24.  Graham did not appear to be under the influence of drugs or alcohol.  T16.  The interview lasted for one hour and 10 minutes.  T16.  After the interview, Graham asked and was allowed to use the bathroom.  T17.

Once the interview was completed, Graham was transported to the federal courthouse, where at approximately noon Owen turned him over to the U.S. Marshal.  T20, 27.  Owen also filled out a booking packet for the Marshal, reflecting Graham's answer to her questions that he had no medical issues and was not suicidal.  T22.  He denied any need for medication.  T33.  That packet indicated Graham's age as 33 years old.  Gov't Exh. 3.

Although Owen did not have any specific information about Graham's educational attainment, she perceived him to be intelligent in that he articulated his answers and spoke well.  T23.  Also, although Graham was unemployed at the time of his arrest, Gov't Exh. 3 at 3, he had been employed as a loan officer with Direct Mortgage.  Gov't Exh. 2 at 1.

7

Owen denied that she purposefully delayed his initial appearance in order to obtain any statements before he was advised of his right to remain silent in court.  T25. Graham had his initial appearance before Magistrate Judge Brill that afternoon.  T27; *see also* Doc. 4 at 1 (Magistrate Judge Minute Sheet reflecting initial appearance and arraignment on December 9, 2010 at 3:47 p.m.).

*Contentions of the Defendant*

In his motion to suppress statements, Graham raised the following challenges to his statement:

1.      the interrogating agents intentionally delayed his arraignment in order to obtain a statement from him before he could be advised of his constitutional rights by a magistrate judge and that too much time elapsed between his arrest and arraignment;

2.      the interrogating agents failed to properly notify him about the nature of the offense with which he was charged at the time of the interview;

3.      he was not properly advised or knew that he was not required to make any statement or that any statement could be used against him;

4.      he was not properly advised about his right to counsel during questioning and was without counsel when he was questioned; and

5.      his statement was not freely, knowingly and voluntarily made.

8

[Doc. 43 at 1-2]. The third, fourth and fifth claims all involve the knowing, intelligent and voluntary waiver of his rights and the voluntariness of his subsequent custodial statement. Although Graham's motion to suppress does not expressly raise any challenge to the government's compliance with *Miranda*, his subsequently-filed motion *in limine* appears to raise such a claim. [*See* Doc. 51]. Therefore, the Court first will discuss whether Graham knowingly, intelligently and voluntarily waived his *Miranda* rights and the voluntariness of his subsequent custodial statement. Then the Court will discuss Graham's remaining claims.

### Discussion

#### 1.       Compliance with Miranda

 The government bears the burden of showing that the defendant's in-custody statements were obtained in compliance with the dictates of *Miranda v. Arizona*, 384 U.S. 436 (1966), and were otherwise voluntary. *Missouri v. Seibert*, 542 U.S. 600, 608 n.1 (2004); *Colorado v. Connelly*, 479 U.S. 156, 168 (1986); *Miranda*, 384 U.S. at 475.

Under *Miranda*, "evidence obtained as a result of a custodial interrogation is inadmissible unless the defendant had first been warned of his rights and knowingly waived those rights." *United States v. Parr*, 716 F.2d 796, 817 (11th Cir. 1983). Before

9

a suspect's uncounseled incriminating statements made during custodial interrogation may be admitted, the prosecution must show " 'that the suspect made a voluntary, knowing and intelligent waiver of his privilege against self-incrimination and his right to counsel.' " *United States v. Lall*, 607 F.3d 1277, 1282 (11th Cir. 2010) (quoting *United States v. Beale*, 921 F.2d 1412, 1434 (11th Cir. 1991)).  The government must prove by a preponderance of the evidence that the defendant waived his rights knowingly and voluntarily.  *United States v. Glover*, 431 F.3d 744, 748 (11th Cir. 2005).  To meet its burden, the government may not rely on " 'presumptions or inferences that when police officers read to an accused from a card they are reading *Miranda* warnings or that what is read, without revelation of its contents, meets constitutional standards.' " *United States v. Wright*, 300 Fed. Appx. 627, 632 (11th Cir. 2008) (quoting *Moll v. United States*, 413 F.2d 1233, 1238 (5th Cir. 1969)).  However, the government does not rely merely on "a presumption" if the defendant admits a warning was given and the arresting officer testifies that he read from a card containing "the standard *Miranda* warnings."  *Id.*; *see also United States v. Klein*, 592 F.2d 909, 914 (5th Cir. 1979).

The *Miranda* opinion itself clearly sets out the required elements of the warnings:

10

> He must be warned prior to any questioning that he has the right to remain silent, that anything he says can be used against him in a court of law, that he has the right to the presence of an attorney, and that if he cannot afford an attorney one will be appointed for him prior to any questioning if he so desires.

*Miranda*, 384 U.S. at 479; *see also United States v. Street*, 472 F.3d 1298, 1310 (11th Cir. 2006).

In this case, Graham was advised of *Miranda* warnings on two occasions, first orally in Owen's vehicle and in writing at Postal Inspector headquarters.  Both set of warnings were legally complete, in that they advised him before questioning of his right to remain silent, that anything he said can be used against him in court, that he had the right to the presence of an attorney and that if he cannot afford an attorney one will be appointed to represent him before any questioning.  They even additionally advised him of the additional right to stop the questioning at any time to consult with a lawyer.  As a result, Graham's third and fourth contentions are without merit and should be rejected because he was advised of his right to remain silent, that anything he said can be used against him in court, and his right to consult with an attorney before and during questioning.

Graham also voluntarily waived his *Miranda* rights.  An accused effectively waives his *Miranda* rights if he: (1) voluntarily relinquishes them as the product of a

11

free and deliberate choice, rather than through intimidation, coercion or deception; and (2) makes his decision with a full awareness of both the nature of the rights being abandoned and the consequences of the decision to abandon them. *United States v. Barbour*, 70 F.3d 580, 585 (11th Cir. 1995). A waiver is effective where the totality of the circumstances reveal both an uncoerced choice and the requisite level of comprehension. *Id.* An express written or oral waiver, although not conclusive, is usually strong proof of the validity of the defendant's waiver. *North Carolina v. Butler*, 441 U.S. 369, 373 (1979); *Blasingame v. Estelle*, 604 F.2d 893, 896 (5th Cir. 1979).

In this case, Graham on two occasions indicated he understood the *Miranda* rights being read to him, once in the inspector's vehicle and again at the Postal Inspector's headquarters. The warnings given to him each time were complete. They advised him that he had the choices to (1) speak or answer questions or remain silent, (2) consult with an attorney before being questioned and during questioning, and (3) continue answering questions or stop answering them.

Also, the fact that he was in custody when he was read and waived his *Miranda* rights is of no moment because *Miranda* presupposes that the suspect is in custody. *See United States v. Rhodes*, 30 F.3d 142 (Table), 1994 WL 386026, *5 (10th Cir. 1994) (stating the general rule for needing *Miranda* warnings presupposes the existence of

12

two conditions, custody and interrogation). Further, while being explained his *Miranda* warnings, there is no evidence that either inspector present at the time displayed her weapon, as the evidence shows that once the apartment was secure, weapons were re-holstered, and at headquarters, Owen and Henry's weapons were concealed. It appears that Graham was not handcuffed inside the interview room. Further, there are no statements made prior to Graham's signing the waiver form that indicate that the inspectors in any way deceived him about the rights being waived, such as by giving him advice which contradicted *Miranda*'s protections. *Compare Lall*, 607 F.3d at 1283-84 (holding *Miranda* waiver not valid where defendant was told after having waived his rights that no charges would be pursued against him). Finally, the facts that Graham (1) twice read his rights, (2) allowed to read along the second time, (3) and signed the waiver form which stated that he understood and waived his rights, was not pressured or threatened to waive his rights, and was willing to waive them, demonstrate that his waiver was accomplished without coercion.

Therefore, the Court concludes Graham validly waived his *Miranda* rights, including his right to remain silent and his right to consult with and have present an attorney. As a result, his statement is not rendered inadmissible on the grounds that he

13

did not have a lawyer present, because he validly waived his right to have a lawyer present while he was questioned.

### 2. *Voluntariness of statements*

Aside from the dictates of *Miranda*, whether a statement was voluntarily given must be examined in light of the totality of the circumstances. *See Schneckloth v. Bustamonte,* 412 U.S. 218, 226 (1973); *Hubbard v. Haley*, 317 F.3d 1245, 1252 (11th Cir. 2003). This totality of the circumstances test directs the Court ultimately to determine whether a defendant's statement was the product of "an essentially free and unconstrained choice." *United States v. Garcia,* 890 F.2d 355, 360 (11th Cir. 1989). Among the factors the Court must consider are the defendant's intelligence, the length of his detention, the nature of the interrogation, the use of any physical force against him, or the use of any promises or inducements by police. *See, e.g., Bustamonte,* 412 U.S. at 226; *United States v. Gonzalez,* 71 F.3d 819, 828 (11th Cir. 1996). However, while the Eleventh Circuit has "enumerated a number of (non-exclusive) factors that may bear on the issue of voluntariness, the absence of official coercion is a *sine qua non* of effective consent. . . ." *Gonzalez*, 71 F.3d at 828 (citations omitted). Sufficiently coercive conduct normally involves subjecting the accused to an exhaustingly long interrogation, the application of physical force or the threat to do so,

14

or the making of a promise that induces a confession. *See Connelly*, 479 U.S. at 163 n.1; *Miller*, 838 F.2d at 1536; *United States v. Castaneda-Castaneda*, 729 F.2d 1360, 1362-63 (11th Cir. 1984). Isolated incidents of police deception, *id.*; *Frazier v. Cupp,* 394 U.S. 731, 739 (1969); and discussions of realistic penalties for cooperative and non-cooperative defendants, *see United States v. Mendoza-Cecelia*, 963 F.2d 1467, 1475 (11th Cir. 1992); *United States v. Nash,* 910 F.2d 749, 753 (11th Cir. 1990), are normally insufficient to preclude free choice.  Moreover, where an accused has already been informed that he did not have to speak at all, either truthfully or falsely, and he was further informed that he could stop talking any time he chose, an admonition to tell the truth does not render the subsequent statements involuntary.  *United States v. Barfield*, 507 F.2d 53, 56 (5th Cir. 1975).  To be involuntary, the interrogation must reflect a measure of compulsion beyond that inherent in the custody itself.  *See Rhode Island v. Innis*, 446 U.S. 291, 300 (1980).

Graham's statements were voluntarily made.  The evidence demonstrates his intelligence.  Although the record does not reflect his level of educational attainment, Inspector Owen testified without contradiction that she perceived him to be intelligent in that he articulated his answers and spoke well.  T23.  He was 33 years old and lived in an apartment with a roommate.  His prior employment was as a loan officer.  Gov't

15

Exh. 2 at 1.  He owned or operated a motor vehicle.  Gov't Exh. 3 at 2.  Also, although defense counsel intimated by his questions on cross-examination at the suppression hearing that Graham had some physical or mental defect requiring medicine, Owen was never informed of any such condition(s), nor does the record contain any evidence of any physical or mental condition that would have impaired Graham from voluntarily answering questions or making statements to the Postal Inspectors.

Further, Graham was not in custody for an unduly long period of time prior to being questioned.  His questioning began approximately one hour and 20 minutes after he was arrested.

Nor was the questioning, which took about one hour and ten minutes, unduly lengthy.  While the fact that the questioning session was short does not assure that a confession was given voluntarily, *see Haynes v. State of Washington*, 373 U.S. 503, 504 (1963), the federal courts have found interrogations far longer than the one in this case to be not unduly coercive.  *United States v. Gatewood*, 184 F.3d 550 (6th Cir. 1999) (rejecting defendant's claim that his confession was involuntary where, among other things, the interrogation was "conducted during regular business hours" and lasted only 3.5 hours), *vacated on other grounds* 204 F.3d 680 (6th Cir. 1999), *reh'g en banc* 230 F.3d 186 (6th Cir. 2010); *Jenner v. Smith*, 982 F.2d 328, 334 (8th Cir. 1993)

16

(questioning a suspect for six or seven hours is not unconstitutionally coercive *per se*); *United States v. Dehghani*, No. 06-00168-01-CR-W-GAF, 2007 WL 731387, *9 (W.D. Mo. Mar. 6, 2007) (five and one-half hours "not particularly lengthy for an interrogation"). *Cf. United States v. Fahey*, No. CRIM.05-31ERIE, 2006 WL 3324918, *5 (W.D. Pa. Nov. 15, 2006) (holding that an interrogation of one hour was not lengthy).   In this case the one hour and 10 minute interrogation was not unduly coercive.

As to the nature of the interrogation, Graham was questioned in a small room, but the evidence demonstrates that it primarily involved his review of checks made out to his name and the disbursal of the proceeds thereof. *See* Gov't Exh. 2.  There is no evidence that the interrogation was uncivil or heated in any way, or that he was threatened or pressured by either Inspector Owen or Inspector Henry.  There similarly is no evidence that either inspector coercively cajoled answers from the defendant.

Next, there is absolutely no evidence of any physical force (beyond being in custody) used against Graham to get him to answer questions.  He was seated around a table in a small room.  No weapons were displayed.  He was not in handcuffs.  During the interview, none of the inspectors stood up to cower over the defendant.

17

Finally, there is no evidence that the inspectors used any improper promises or inducements to acquire Graham's statements. While he was told not to lie and to tell the truth, these admonishments have been held not to render a statement involuntary. *See Barfield*, 507 F.2d at 56.

As a result, the Court concludes that Graham's contention that his statement was involuntary should be rejected. The undersigned **RECOMMENDS** that the District Court admit Graham's post-*Mirandized* statements because they were voluntarily made.

### 3.    Delay in Presentment

As noted above, Graham contends in his motion that the inspectors purposely delayed his presentment to a magistrate judge in order to obtain a statement from him prior to his appearance in court, where he undoubtedly would have been advised of his right to remain silent.

Initially, as a matter of evidence, the record is uncontradicted that the inspectors harbored no such purpose. In fact, the record demonstrates that Owen properly and accurately advised Graham of his constitutional rights on two occasions. Telling him he could remain silent and had the right to consult with a lawyer is inconsistent with Graham's unsupported allegation that the inspectors deprived him of a speedy presentment in order to get a statement out of him.

18

In any event, any delay in this case would not result in suppression of Graham's post-arrest statements.  The Supreme Court in *Corley v. United States*, 129 S. Ct. 1558 (2009), discussed the relationship between the voluntariness of custodial statements and the presentment requirement of 18 U.S.C. § 3501(c), holding that

> a district court considering a motion to suppress a custodial statement "must find whether the defendant confessed within six hours of arrest (unless a longer delay was 'reasonable considering the means of transportation and the distance to be traveled to the nearest available [magistrate judge]').  If the confession came within that period, it is admissible, subject to the other Rules of Evidence, so long as it was "made voluntarily and . . . the weight to be given [it] is left to the jury." . . .  If the confession occurred before presentment and beyond six hours, however, the court must decide whether delaying that long was unreasonable or unnecessary under the *McNabb-Mallory*[3] cases, and if it was, the confession is to be suppressed.

*Corley*, 129 S. Ct. at 1571 (citations omitted).

––––––––––––––––––––

[3]   In *McNabb v. United States*, 318 U.S. 332, 345 (1943), the Supreme Court invoked its supervisory authority over federal courts and held that confessions were inadmissible when obtained during unreasonable delay in bringing a prisoner before a magistrate ("presentment").  In *Mallory v. United States*, 354 U.S. 449, 455 (1957), the Court interpreted the then-current version of Federal rule of Criminal Procedure 5(a) and held that a confession given seven hours after arrest was inadmissible for "unnecessary delay" in presentment before a magistrate, where the police questioned him for hours "within the vicinity of numerous committing magistrates." Section 3501(c), imposing a 6 hour rule, was enacted in 1968.  *Corley*, 129 S. Ct. at 1563.

AO 72A
(Rev.8/8
2)

Applying these principles, Graham's motion is due to be denied. Since his interview was conducted within less than two hours after his arrest, his interview did not violate § 3501(c), and subject to the conditions set out in *Corley*, is admissible at trial.

### 4.   *Advice of Charges*

Finally, the record belies Graham's argument that he was not advised of the charges against him at the time of the interview.   As Owen testified, without contradiction, she advised him of the nature of the charges, and did so in order to get information from Graham about his involvement in the crime with which he was charged.  T26.

### *Conclusion*

For all the above and foregoing reasons, the undersigned **RECOMMENDS** that Defendant Graham's motion to suppress statements, [Doc. 43], be **DENIED**.  The Court has now ruled upon all motions which have been referred to it.  Accordingly, this case is **CERTIFIED READY FOR TRIAL**.

20

AO 72A
(Rev.8/8
2)

**IT IS SO RECOMMENDED AND CERTIFIED**, this the 14th day of October, 2010.

_____
**ALAN J. BAVERMAN**
**UNITED STATES MAGISTRATE JUDGE**

21